UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHAHEED TAALIB'DIN MADYUN, et al.,

    Plaintiffs,

v.                                                     Case No. 04-C-343

LEMON, et al.,

    Defendants.

## DECISION AND ORDER

In an order dated March 30, 2005, I granted the defendants' motion for summary judgment as to most of the plaintiffs' claims because such claims had not been exhausted via the complaint and appeals process of the Oshkosh Correctional Institution, the prison where Madyun was serving his sentence. Three claims remain outstanding and will be addressed herein. First, in the March 30 decision I withheld ruling on Madyun's seventh claim because the documentary evidence did not clearly show, either way, whether he had exhausted that claim. Second, Madyun's ninth claim, which involved smoke in his room, was not at issue in the March 30 decision because the state conceded it had been exhausted. Third, Claim 11 on behalf of Madyun and inmate Larry Kiser was dismissed only as to Madyun as it appeared Kiser had exhausted his remedies. In addition, Madyun filed a motion for reconsideration of my dismissal of his eighth claim, claiming that evidence in the record supports a finding that he exhausted that claim. Based on the evidence now submitted in the present motion for summary judgment, I conclude that all

three of the remaining claims should be dismissed and that the motion for reconsideration should be denied.

**1. Claim 7**

Claim 7 alleged conspiracy, retaliation and cruel and unusual punishment. Among other things, Madyun claimed several guards dressed in black entered his room and beat him one night, all in an effort to get him to stop his lawsuits against them. In the March 31, 2005 order, I concluded that an inmate complaint filed by Madyun (Exhibit 39) could constitute evidence of the exhaustion of his remedies: "Exhibit 39, however, is an inmate complaint that does seem to recite many of the same facts as Claim 7 of the complaint."[1] I also found that Exhibit 40, which was a March 12, 2002 letter from Warden Judy Smith, could constitute evidence of a response to Madyun's request for review of the ICE's rejection of his complaint (Exhibit 39). Exhibit 39 is indeed very similar to the claim alleged in this case and could be based on the same conduct. The question, however, is whether Madyun appealed the decision rejecting his complaint, which is part of the exhaustion process. *See, e.g., Gidarisingh v. McCaughtry,* 2005 WL 2428155, *9 (E.D. Wis. 2005). My earlier decision left open the possibility that Exhibit 40–the letter from Smith–was evidence of Madyun's appeal. It is now clear, however, that Exhibit 40 is actually a response to other, unrelated, correspondence from Madyun dating back to February 26, 2002, and thus it is *not* a response to Exhibit 39, his prisoner complaint. (DPFOF ¶¶ 26-28; Smith Aff., Ex. B.) For instance, Exhibit 40 refers to "your letter concerning your allegations of due process allegations," (sic) whereas Exhibit 39 was a prisoner complaint, not a letter. Nor did it cite any "due process" violations (at least in the segment provided in Madyun's exhibits). Moreover,

---

[1] The exhibits referred to are Madyun's own exhibits, at docket #66, which he filed on January 3, 2005.

Exhibit 40 makes reference to a case numbered 02-CV-00043-C, filed in the Western District, which is something that is *not* found referenced in Exhibit 39. Instead, the reference to case 02-CV-00043-C shows up in Madyun's unrelated February 26 letter. Based on these inconsistencies, it would make no sense to construe Exhibit 40 as being a response to Exhibit 39.

Madyun's only response to this is that the March 12 letter (Exhibit 40) *must* have been a response to his appeal because he received an identical letter from Smith dated March 8. (Madyun Aff., Docket #91, at 12.) Why would she write two identical letters, he asks? The only explanation, in his view, is that the one of the letters was actually directed at the issues involved in claim 7. But this argument cannot escape the same issues noted earlier. Both letters address case 02-CV-00043-C, which was not raised as an issue in his inmate complaint (Exhibit 39). Both refer to a "letter" rather than a complaint. Accordingly, neither of the letters can be construed as having anything to do with the issues raised by claim 7.

Without Exhibit 40, Madyun has no evidence that he ever appealed the rejection of his complaint. As I noted in my previous order, "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating." *Pozo v. McCaughtry,* 286 F. 3d 1022, 1024 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prisons' administrative rules require." *Id.* at 1025. The prison also has no record of any appeal. (Second Smith Aff., ¶ 8.) Accordingly, because there is no evidence that Madyun exhausted his administrative procedures, § 1997(e) bars further consideration of claim 7.

**2. Claim 9**

What remains of Claim 9 involves Madyun's allegation that an inmate near his cell started a fire and that the prison guards took over forty-five minutes to respond. This delayed response,

which continued for a total of two hours, was an intentional effort to expose Madyun to the smoke, the denouement of the guards' scheme to "commit murder with the false justification that Madyun died of natural causes." (Compl. ¶ 125.) The claim is brought against defendants Kuster, Jones and Smith, although nowhere in the complaint does Madyun explain their involvement.

The complaint was silent on their involvement, and so are his present efforts. His response brief merely relies on my screening order as if that order had decided that they *were* responsible. That is not the case. Instead, it was Madyun's responsibility to come forward with evidence showing how each defendant is involved in the alleged constitutional violation, especially when the claim is so implausible on its face. Each of the three defendants states that they were not even at the prison at the time of the fire Madyun alleges, and it is therefore undisputed that their involvement is nil. Accordingly, summary judgment on claim 9 is appropriately granted in the defendants' favor.

**3. Claim 11**

Madyun and plaintiff Larry Kiser were initially allowed to proceed on Claim 11 which alleged that their Eighth Amendment rights were violated when defendants Kaplan, Keller, Schwochert, Smith, Pierce and Schroeder "flooded the vents with gas in an attempt to cause death, or other permanent harm to the inmates." (May 17, 2004 Order at 15.) In my March 30, 2005 order I granted the defendants' motion to dismiss Madyun's claim for failure to exhaust, but concluded that Kiser's claim remained because he had exhausted his administrative remedies. Defendants now seek summary judgment on Kiser's claim on the ground that there is no evidence to support it.

In their proposed findings of fact they point out that an addition to the Segregation Unit was under construction at the time in question and construction-related fumes and odors came into the building through the air handlers on occasion. The fumes were mild, however, and staff who worked closer to the site than inmates did not even notice them. Had they been aware of a problem with fumes, staff would have started a hallway fan which would have solved the problem. Moreover, none of the inmates complained until Kiser filed his complaint and he never sought medical treatment for it. (DPFOF ¶¶ 29-35.) These facts are uncontested. Although Kiser filed an affidavit supporting Madyun's version of claim 7, he has not responded to the defendants evidence that claim 11 is without support. Accordingly, summary judgment will be granted as to this claim also.

**4. Motion for Reconsideration**

Madyun has also filed a motion for reconsideration of my dismissal of his eighth claim, in which he alleged a conspiracy to confine him illegally, fraud, falsification of records, etc. The claim was dismissed for failure to exhaust, but Madyun now claims that I should reconsider the dismissal because he inadvertently failed to cite evidence that he actually did exhaust these claims. The evidence he now points to consists of a series of rambling inmate complaints that show, at best, he may have exhausted the review process regarding the prison's failure to timely account for a check he received in the mail. The prison's failure to immediately put the funds in his account, he alleged, caused him to be written up because he later attempted to make purchases at the canteen while having no funds in his account.

Upon review, it does appear that Madyun has exhausted at least part of his eighth claim, namely, the part set forth in paragraph 103 of his complaint. But now that the matter has been clarified by the documents he has cited, it is evident that the underlying claim failed as a matter

of law from the outset. The gist of his claim is that the prison had a duty to deposit funds from a check he received into his account as soon as the check arrived in the mail. To do otherwise, he claims, was fraud and, assuredly, part of some larger conspiracy to prevent him from buying stamps, which in turn stifled his litigation efforts. What happened here was that Madyun received a receipt for a check on a Thursday, but Liz Lemery "postdated" the check to indicate it was received on the following Monday. (See Pltf. Ex. 57e-58.) The postdating occurs because the prison does not post funds on Fridays and its "bank" is closed on weekends. From these facts, I simply cannot discern any Constitutional violation. Indeed, a two-business-day delay in the availability of funds is the sort of experience that individuals outside of prisons encounter on a daily basis. Madyun appears to allege, of course, that the prison's stated reasons for all of this are a sham, but that is not supported by anything in the record or in the evidence he cites. The facts simply do not make out a violation of the Constitution. Accordingly, the claim, inasmuch as it was exhausted, is dismissed on its merits for failure to state a claim upon which relief may be granted. To the extent the motion for reconsideration seeks injunctive relief, it is denied for the same reasons.

In conclusion, the plaintiffs' motions are denied, the defendants' motion for summary judgment is granted as to all claims, and the case is dismissed.

SO ORDERED this 27th day of December, 2005.

s/ William C. Griesbach
WILLIAM C. GRIESBACH
United States District Judge
